PIZZUTO, J.T.C.
Plaintiff Hillcrest Health Service System, Inc., (“Hillcrest”) filed complaints for direct review in the Tax Court of the assessments for 1992 and 1993 on certain property in the City of Hackensack. A separate complaint seeks review of a judgment of the Bergen County Board of Taxation affirming an added assessment on the same property for 1992. In each action plaintiff alternatively *41 claims exemption and contests valuation. The exemption claims have been presented in evidentiary proceedings with valuation issues to be addressed, if necessary, upon determination of the exemption claims. The particular exemption claimed is that provided by N.J.S.A. 54:4-3.6 for property “used in the work of associations and corporations organized exclusively for hospital purposes.” The facts have been partly stipulated and partly presented through the testimony of witnesses called for plaintiff.
Hillcrest is a not-for-profit corporation organized under Title 15A of the New Jersey Revised Statutes. It is the parent corporation of a separate not-for-profit corporation that operates an acute-care hospital, known on the assessment dates as Hackensack Medical Center, whose property is generally exempt from taxation. The property concerned in these actions is located across Second Street from the main facility of Hackensack Medical Center. It consists of a number of formerly separate lots that for the subject tax years were aggregated in a single assessment by the Hackensack assessor. Hillcrest was the owner of the property at all times relevant to the assessments. By lease dated December 10, 1990, the land, together with a building to be constructed thereupon, was leased to Hackensack Medical Center.
On October 1, 1991, the assessment date for 1992, a four-story building of approximately 60,000 square feet and associated parking areas wei’e in the course of construction on the property. Regarding the property as taxable, the assessor established a valuation for the land and incomplete structure in the conditions that held on the assessment date. An assessment of this kind, on property including an incomplete structure, is commonly called a “partial” assessment. See Snyder v. South Plainfield Bor. 1 N.J.Tax 3, 7 (Tax 1980). The 1992 assessment thereby established (and appealed directly to the Tax Court) was $2,442,700, of which $695,500 was allocated to land and $1,747,200 to improvements.
Construction was completed during 1992. The first occupants moved into the building in April, and a final certificate of occupancy was issued on June 15, 1992. The assessor did not consider the *42 completion of the construction to change the taxable status of the property. Accordingly, he imposed an added assessment under N.J.S.A. 54:4-63.1 et seq. Pursuant to the added assessment statute, he determined the difference in taxable value between the property after completion of the improvements and the partial assessment previously imposed for 1992. That difference was $2,620,800. Because the improvements were considered completed on the date of the certificate of occupancy, the added assessment was determined by proration factor of %■ (or .5), reflecting the proportion of full months in the tax year following completion. N.J.S.A. 54:4-63.3. The resulting added assessment, allocated entirely to improvements, was $1,310,400. As permitted by N.J.S.A. 54:4-63.3, the added assessment was appealed to the Bergen County Board of Taxation, and the Board’s judgment affirming the assessment was in turn appealed to the Tax Court.
For 1993 Hackensack implemented a district-wide tax revaluation. The 1993 assessment on the subject property, containing the completed structure, was $4,557,100, of which $695,500 was allocated to land and $3,861,600 to improvements. This assessment was also appealed directly to the Tax Court.
Each of the three complaints has its own focus. For 1993, Hillcrest contends that the completed improvements were in actual use for hospital purposes on the assessment date so as to qualify for exemption under N.J.S.A. 54:4-3.6. In contesting the 1992 added assessment, it maintains that essentially the same use existed as of the completion of the improvements. It relies on the decision in Schizophrenia Foundation of N.J. v. Montgomery Tp., 6 N.J.Tax 439 (App.Div.1984), to the effect that the use of the property as of completion is determinative when an exemption claim is made with respect to an added assessment. Consequently, it argues that the added assessment is not sustainable. Hill-crest’s exemption claim concerning the 1992 partial assessment relies principally upon Paper Mill Playhouse v. Millburn Tp., 7 N.J.Tax 78 (Tax 1984), which held that certain exempt property did not lose its exemption diming the reconstruction of improvements destroyed by fire. Plaintiff notes that several of the *43 formerly separate lots had qualified for exemption by virtue of their use to provide parking for hospital facilities. It argues that this property, and by extension the remainder of the land and the partially constructed improvements, should be exempt for 1992 on the basis that there has been continuous use for hospital purposes.
Hackensack’s principal argument in opposition to all of the exemption claims is that Hillcrest, the owner of the property, as distinguished from Hackensack Medical Center, its user, is not organized exclusively for hospital purposes. Hackensack maintains, in addition, that the previous exempt use of a portion of the property is distinct from the later use and that it did not continué during the construction period. With the exception of a small portion of the building, Hackensack does not dispute that, once occupied, the building was used for hospital purposes. The City also does not dispute that use on the completion date is relevant in determining the validity of the added assessment.
The most important, and indeed the dispositive, question in all of these matters is the organization of Hillcrest. The amended certificate of incorporation of Hillcrest, in effect on the assessment dates, provides:
The Corporation shall be organized and at all times operated exclusively as an educational and charitable organization within the meaning of Section 501(c)(3) of the Code. Pursuant to Section 509(a)(3) of the Code the Corporation shall be organized, and at all times exclusively operated for the benefit of, to perform the functions of, or to carry out the purpose of, Hackensack Medical Center, Hackensack Health and Hospital Foundation, and other affiliated or related organizations, all of which are publicly suppoited health care organizations organized for the purpose of establishing, maintaining, sponsoring and promoting activities relating to the improvement of human health and well-being, which are exempt from Federal income taxation under Section 501(c)(3) of the Code, and which are exempt from classification as non-private foundations pursuant to Section 509(a)(1) or 509(a)(2) of the Code. [Emphasis added. The references to the “Code” are to the Federal Internal Revenue Code.]
In addition to Hackensack Medical Center, Hillcrest’s subsidiaries include:
— Hackensack Medical Center Foundation, Ine., which coordinates fundraising activities;
— Essex Parking Co., which operates a parking garage on the main hospital site;
— Bergen Home Health Services, which provides personal care services in the residences of recipients;
*44 — Bergen Health Management System, Inc., which since 1994 has operated a day-care service for children of hospital employees that was formerly operated by the hospital;
— Hillcrest Properties, Inc., described as a real estate holding company; and
— Bergen Health Systems, which conducts a joint venture with a profit-making entity to increase efficiency of energy consumption at the Medical Center’s facilities and thereby realize cost savings.
Hillcrest contends (and the testimony of its witnesses tends to support the contention) that the activities of all subsidiaries are coordinated and all subserve the purposes of the hospital as the primary operation. Hackensack argues that certain of these activities (e.g., the home care services) are distinct from hospital operations and are not hospital purposes under N.J.S.A. 54:4-3.6. Moreover, Hackensack submits, Hillcrest is authorized to engage in a wide-ranging variety of health care activities, extending beyond the operation of a hospital. Hackensack therefore maintains that Hillcrest’s property, as opposed to that of the hospital corporation, is not exempt from taxation.
It is important to note that use of property for hospital purposes is not alone sufficient to qualify the property for exemption. N.J.S.A. 54:4-3.6 specifically allows exemption “only where the association, corporation or institution claiming the exemption owns the property in question.” See Ehrlich v. Passaic 15 N.J.Tax 561 (Tax 1995). Where the user of the property has only a leasehold interest, a hospital purposes exemption is unavailable. Claremont Health Systems, Inc. v. Point Pleasant Bor., 16 N.J.Tax 604 (Tax 1997).[1]
In the present matters, it is not disputed that, once the building was occupied, it was generally being used for purposes actually connected with the operation of the Hackensack Medical Center. *45 Hackensack contends that only a small portion of the building was not used for hospital purposes. Since hospitals are among the users entitled to partial exemption for the portion of property actually used for exempt purposes, Hackensack’s argument is that the portion of the building whose use is disputed is subject to taxation. See Jersey Shore Medical Ctr. v. Neptune Tp., 14 N.J.Tax 49 (Tax 1994). It is not use, therefore, but ownership that presents the seriously contested issue. The testimony discloses that a deliberate decision was made for the facility to be constructed by Hillcrest and leased to the hospital, rather than directly constructed and owned by the hospital. The basis for the decision was to finance the construction without the incurrence of debt by the hospital. The debt was incurred by Hillcrest, and it is undisputed that the hospital is required to make lease payments sufficient to amortize debt, pay management expenses and leave at least some surplus for Hillcrest’s other operations.
In Jersey Shore, supra, questions concerning the organization of the hospital’s parent corporation were found irrelevant because the property whose exemption was in issue was owned by the hospital corporation. In addition, Jersey Shore involved a ground lease from the hospital to its parent, the construction of the facility by the parent and a lease of the property back to the hospital. The court considered that this pattern did not preclude a finding of ownership by the hospital because the parent was “interposed solely as a financing vehicle and the property is both owned and operated by Jersey Shore.” Jersey Shore, 14 N.J.Tax at 55. In the present circumstances, ownership and use are clearly divided between the hospital and its parent, and Jersey Shore’s analysis does not control.
A claim of exemption for property owned by a corporation affiliated with the hospital for whose purposes the property was claimed to be used was presented in Mega Care, Inc. v. Union Tp., 15 N.J.Tax 566 (Tax 1996). The exemption was claimed for a nursing home that was owned and operated by a non-profit corporation controlled by a separate corporation that also controlled the hospital with whose operations it was claimed those of *46 the nursing home were integrated. Mega Care concluded that, in these circumstances, the requirement that the owner of the property be organized for hospital purposes and the requirement that the property be owned by the entity claiming the exemption could not be satisfied, unless the affiliate that owns the property is restricted by its own certificate of incorporation to activities undertaken in support of and integration ;with those of the hospital.
There is no significant distinction between Mega Care and the present matters. Here there is a lease of the property to the hospital, rather than operation by the affiliate, and here the related corporation is a parent rather than a commonly controlled company. The essentials, however, are the same. Propei'ty owned by one corporation is claimed to be exempt by virtue of its use in the operations of the other. It is also clear that Hillcrest’s operations are not restricted to the support of Hackensack Medical Center in the manner required by Mega Care to support exemption. In Mega Care it was not necessary to determine whether the nursing home’s operations were actually integrated with those of the hospital. In this case, it is similarly unnecessary to determine whether the operations of Hillerest and its other subsidiaries are, actually undertaken for the sake of Hackensack Medical Center.[2] Since Hillcrest’s operations are not by its own *47 certificate of incorporation restricted to support of Hackensack Medical Center, property owned by Hillcrest is not exempt, although it is used by the hospital.
The conclusion that property owned by Hillcrest is not exempt from property taxation when used in the work of Hackensack Medical Center is dispositive of the claims presented concerning the partial assessment for 1992, the added assessment for that year and the 1993 full-year assessment. Nevertheless, it seems appropriate to address, at least briefly, the question of exemption during the construction period and the particular use whose qualification for exemption Hackensack disputes.
 In support of its claim for exemption during the construction period, Hillcrest relies essentially on Paper Mill Playhouse v. Millburn Tp., supra, 7 N.J.Tax 78. That decision clearly recognizes the general rule that exemption requires an actual use of property for exempt purposes and not merely an intended or projected use. Even where the character of the building under construction and its adaptation to an exempt use are evident, an exemption does not attach until actual use commences. Holy Cross Precious Zion Glorious Church of God v. Trenton City, 2 N.J.Tax 352 (Tax 1981) (incomplete church).
Paper Mill Playhouse found a very narrow exception to this rule where fire-damaged property was in the course of reconstruction. In those circumstances, it may be considered that use is not interrupted, but continues during the reconstruction period. Hillcrest seeks to apply this principle in the present matter, where a portion of the land on which the new facility was constructed had formerly been used as a parking lot for the main hospital site across the street and had enjoyed an exemption at that time. The record does not disclose whether the property so used was in the ownership of the hospital or Hillcrest when it was exempt. Plaintiffs proofs also do not establish that the former *48 parking lot was used by any of the hospital departments now located in the new facility that were formerly housed at the main site. Although the former use was parking and a portion of the current use is also parking, identity of users has not been shown.
There is a more important reason, however, why Paper Mill Playhouse does not apply here. N.J.S.A. 54:4-3.6 directly confers an exemption on buildings and only derivatively, to the extent “necessary for the fan* enjoyment thereof,” on land. Where there is no building, land is not exempt. See Boys’ Club of Clifton, Inc. v. Jefferson Tp. supra; Hackensack v. Hackensack Medical Ctr., 9 N.J.Tax 460 (Tax), aff’d 228 N.J.Super. 310, 549 A.2d 869 (App.Div.1988). (Exemption not available for parking lot on which no building had been erected where lot served a facility four to five blocks distant.) When the parking area in question here ceased to support the buildings across the street, there was unquestionably an interruption in exempt use. Even if the new facility were found exempt, it is a different building on a different site from that for which parking was formerly provided; and the exemption of any portion of the site used for parking can only be derivative from the exemption of the new building, upon its completion.
Land enjoying, at discrete periods, an exemption derivative from the exemption of different buildings cannot be found to have a continuing exemption. Hillcrest recognizes that, if a continuing exempt use for the former parking lot cannot be established, its claim for exemption for any other part of the property during construction must fail. Accordingly, without regard to the question of ownership, no part of the property can be found exempt during the construction period.
The remaining question concerns the use of a portion of the completed building, if its ownership by Hillcrest does not defeat the exemption claim. The building houses a variety of hospital departments, some of which were formerly located at the main site across the street, some at a greater distance, and some newly established. With one exception, Hackensack does not contest *49 that they are uses that would qualify for exemption, if ownership were not an obstacle. The exception is a “fitness center” containing a variety of exercise equipment that occupies approximately 4,850 square feet of the total building area of approximately 60,000 square feet.
The testimony reflects that the users of this facility include the medical and management staff of the hospital, its employees, and certain out-patients participating in a cardiac rehabilitation program that is also housed in the building. In addition, however, the record discloses that persons having no relation to the hospital may for a fee use the fitness center. The intensity of use by members of the public is not developed on the record. It would not appear, however, that use statistics are essential to demonstrate that an exercise facility open to the general public is used more than incidentally for purposes other than the operation of the hospital. The portion of the building used for the fitness center would not therefore be qualified for exemption. See Jersey Shore Medical Ctr. v. Neptune Tp., supra, 14 N.J.Tax at 69.[3]
For the reasons indicated, the portions of the complaints claiming exemption shall be dismissed and the matters shall proceed to trial, if required, on the valuation claims.

 An exception to this requirement of ownership by the user has been recognized, on the basis of explicit language in the exemption statute, for use by one charitable or religious organization of property owned by another charitable or religious entity. Boys' Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 399-400, 371 A.2d 22 (1977). Absent express statutory provision, a lease from one exempt entity to another does not support an exemption. Roman Catholic Archdiocese of Newark v. East Orange, 17 N.J.Tax. 298 (Tax 1998). But see West Orange Tp. v. Joseph Kushner Hebrew Academy, 13 N.J.Tax 48 (Tax 1993).

 In Mega Care, the inquiry into the nursing home's operations was considered to concern the use of the property for which exemption was claimed. It is sometimes stated, however, that the organization requirement extends beyond the certificate of incorporation and also includes operation consistent with the restricted corporate purposes. See, e.g., Fountain House of N.J., Inc. v. Montague Tp., 13 N.J.Tax 387 (Tax 1993). Absent a restriction imposed by its own corporate charter limiting Hillerest to support of the hospital/it is not necessary to address this question and examine its activities. It would appear, however, that certain of those activities {e.g., the home health care operation) are only incidental, rather than necessary, to the operation of the hospital. Although much attention was given to the day-care operation at trial, for the tax years in question that operation was conducted directly by the hospital on property not here in issue. There is, therefore, no need in these matters to determine whether admission of a limited number of children whose parents do not work at the *47 hospital negates a hospital purpose for the day-care facility. See, however, Jersey Shore, supra, 14 N.J.Tax at 69, indicating that it does not.

 The exemption statute requires that the entity claiming the exemption be organized exclusively i'or the qualifying purpose, but permits an exemption (in the case of hospitals and certain other exempt entities) for the portion of property actually used for exempt purposes when given property is only partly so used. It is clear that in the statutory scheme non-exempt use of particular property does not negate an exclusive organization for the qualifying purpose. If the exclusive organization requirement addresses matters beyond the certificate of incorporation, it would appear to be satisfied, even when particular property is put to a non-exempt use, so long as income so derived is retained for the qualifying exempt activity.