ANDREW, J. T. C.
This matter involves plaintiff’s claim for exemption from local property taxation for the tax year of 1980 pursuant to N.J.S.A. 54:4 — 3.6. For that year the assessor for defendant Cranford Township denied plaintiff’s application for exemption and assessed its property at $130,900 (land $52,400; improvements $78,500). Plaintiff appealed the denial of exemption to the Union County Board of Taxation which affirmed the assessment. Plaintiff now seeks review of that determination in this court.
The issue as framed by the parties is whether plaintiff’s building qualifies for exemption from local property taxation during the course of construction if it is utilized on a number of occasions for exempt activities during the construction period.
There is no dispute as to the essential facts which follow. Plaintiff is a nonprofit religious corporation organized and existing under the laws of the State of New Jersey. During 1978 plaintiff conducted its religious and educational services in rented facilities in Rahway, New Jersey. On March 9,1978 plaintiff acquired the subject property as a vacant parcel of land with the intention of constructing a church and educational center. Ground breaking for the new building took place in November 1978.
*394 The congregants for the most part voluntarily supplied the necessary labor during the construction period. They worked every night of the week, Saturdays and occasionally on Sundays.
As of October 1, 1979, the assessment date for 1980, the exterior of the building had been completed, the heating system and most of the electrical wiring had been installed. The construction had progressed to the point where the volunteers were .concentrating on the completion of the interior of the structure to include such items as the installation of wall panel-ling.
During the construction period two types of prayer services were held within the partially completed edifice. One of the services, the men’s prayer fellowship, had been a regular part of the church’s function since its formation. This service was normally held at the Rahway-rented facility on the first Saturday of each month. However, as soon as the new building was enclosed, in an attempt to accelerate the completion of the new building it was decided that it would be advantageous to discontinue the services in Rahway and resume them in Cranford. It was felt that conducting these services at the building site would encourage the volunteers to work for the entire day. Approximately six to eight of these services, each of which lasted about one hour, were held at the subject property prior to October 1, 1979. This prayer fellowship service has continued down to date.
The second type of religious service conducted at the Cranford location was the women’s prayer meeting. This service was not a part of the church’s functions at Rahway. It was initiated by the women of the church with the aim and hope of accelerating the completion of the church building. Accordingly, every Friday morning women congregants would visit the site and encourage the volunteer workers with prayer and refreshments. These prayer services were discontinued upon the substantial completion of the structure.
Thus, during the period of construction the building was utilized for the men’s fellowship meetings and the women’s *395 Friday morning services. All of plaintiff’s other regularly scheduled calendar events, programs or services including the Christian school, evening Bible school and Sunday morning services were conducted at plaintiff’s rented facilities in Rah-way.
Moreover, it was clear that religious services were not available to the public until February 28,1980, when plaintiff received its temporary certificate of occupancy. Although the final certificate of occupancy has not been issued to date, defendant granted plaintiff an exemption for the tax year of 1981 based on “actual and exclusive” religious and charitable use prior to October 1, 1980.
The statutory provision under which plaintiff seeks exemption provides in pertinent part:
The following property shall be exempt from taxation under this chapter: . .. All buildings actually and exclusively used in the work of ... corporations organized exclusively for . .. religious, charitable or hospital purposes ... the land whereon any of the buildings . .. are erected, and which may be necessary for the fair enjoyment thereof ... and does not exceed 5 acres in extent.... [NJ.S.A. 54:4-3.6].
Plaintiff contends that, for the tax year at issue, all statutory requisites for exemption were satisfied. It urges that prior to and on the pivotal date of this inquiry (October 1, 1979) there existed on the premises a substantially completed building which was “actually and exclusively” used for religious purposes, namely, the men’s prayer fellowship and the women’s prayer service. Plaintiff further maintains that the building was not used for anything other than for religious purposes.
Defendant concedes that plaintiff meets all of the statutory requirements for exemption save one. It resists plaintiff’s application on the basis that even if the building were used for exempt purposes, it cannot be exempt because it was not fully completed, i.e., not ready for public occupancy. In support of this contention defendant points out that prior to the issuance of a certificate of occupancy, whether temporary or permanent, plaintiff’s use of the property, while under construction, constituted a violation of the Uniform Construction Code. N.J.A.C. *396 5:23-2.7(a)(i). [1] Without such a certificate on the assessment date, defendant continues, the building cannot be considered ready for regular, legal use. As a corollary to this defense, defendant also maintains that the services which were conducted on the premises during the course of construction were incidental and hence insufficient to provide a foundation for exemption.
The general rule as to the construction of exemptions in local property tax statutes is that such exceptions are to be strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Princeton Tp. v. Tenacre Foundation, 69 N.J.Super. 559, 563, 174 A.2d 601 (App.Div.1961). Taxation is the rule and exemption is the exception to the rule. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Board of National Missions, etc. v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952). The burden is upon the claimant to clearly bring himself within an exemption provision. Ibid.
This is not to say, however, that a statute is not to receive a reasonable construction. As our Supreme Court had indicated,
... [A] statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law ... The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. [Alexander v. N. J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956) ].
It must be noted, however, that in regard to principles of statutory construction the qualification that construction must *397 be “reasonable” does not destroy a constructional preference for the taxability of property. Container Ring v. Taxation Div. Director, 1 N.J.Tax 203, 208 (Tax Ct.1980), aff’d o.b. Tax Ct. (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). With these basic tenets in mind we can now turn to the, issue at hand.
Preliminarily, however, it must be noted that the taxable or nontaxable status of property in this State relates to October 1 of the pretax year since it is the use of property on that date which determines whether the property is or is not exempt for the tax year. Jabert Operating Corp. v. Newark, 16 N.J.Super. 505, 85 A.2d 216 (App.Div.1951). Pursuant to this, the parties have directed their proofs to this pivotal date.
Research has revealed that the precise issue presented in this case has not received judicial attention in this State. It would, however, be beneficial and instructive to review those cases in which our courts have considered the question of exemption during the course of construction or repair and also the question of exemption of vacant land actually devoted to an exempt purpose.
In Institute of Holy Angels v. Fort Lee, 80 N.J.L. 545, 77 A. 1035 (1910), our former Supreme Court denied an exemption claim where the record revealed that the building was in the course of construction during the year in which the tax was imposed and was not in use during that time. The court held that the building must be in actual use in order to be exempt. A building that was intended for an exempt use, but which had not yet been used for that exempt purpose, could not receive an exemption from taxation.
The Court of Errors and Appeals in Longport v. Bamberger Seashore Home, 91 N.J.L. 330, 102 A. 633 (1917), followed the rationale of the Holy Angels case. In Longport the facts indicated that the buildings involved were erected and completed before the assessment date but had not actually been opened and put to use until after the critical assessment date; therefore, the exemption was denied. The court held that the build *398 ings, although completely erected, were not in actual use for exempt purposes on the assessment date; therefore, an exemption could not be granted. It repeated the language in Holy Angels that actual use and not intended use controls in the determination of a tax exemption.
In YWCA v. Orange, 3 N.J.Misc. 404, 128 A. 580 (Sup.Ct.1925), the court denied the claimed exemption because the building there involved was unfinished and not actually used for an exempt purpose.
In Mt. Olivet Baptist Church v. Newark, 19 N.J.Misc. 232, 18 A.2d 581 (1941), the former State Board of Tax Appeals made it quite clear that the exemption statute not only required actual use on the assessment date but only applied to buildings and not to vacant land. In a short one-paragraph opinion it indicated that the statute exempts only buildings used for exempt purposes together with that land which may be reasonably necessary for the fair enjoyment of the buildings. The statute did not exempt land without buildings even though such land was actually used for open-air religious services.
In Trenton Ladies, etc. v. Trenton, 19 N.J.Misc. 176, 17 A.2d 809 (1941), the State Board of Tax Appeals had occasion to consider another exemption claim involving a building just recently completed for use but not actually in use on the assessment date. There the record revealed that the building in question, acquired by plaintiff prior to the assessment date, required remodeling before it could be converted into a home for aged indigent persons. The repairs and remodeling was fully completed prior to the assessment date and the building and plaintiff were fully able, ready and willing to accept needy persons at the time, but did not actually admit anyone until after the crucial date. The Board avoided the impact of the Longport and Holy Angels cases, supra, on the basis that plaintiff had a fully operational institution in advance of the assessment date. The fact that no one sought admission until after the assessment date was of no consequence. Plaintiff was ready to perform its charitable function; hence the State was receiving a valued consideration for its grant of the exemption.
*399 In YWCA v. Monmouth Tax Bd., 92 N.J.L. 330, 105 A. 726 (Sup.Ct.1919), the buildings owned by the taxpayer were totally destroyed by fire prior to the assessment date. As a consequence, the assessor did not allow an exemption for the tax year. When presented with the argument that the taxpayer was still entitled to the exemption notwithstanding the fact that its building had been destroyed by fire, the court set forth the traditional justification for tax exemption. In denying taxpayer’s claim the court recognized that the actual use of the property is the quid pro quo for an exemption. Since, in the case before it, use of the building was impossible, the court reasoned that the “legislative reason actuating the concession [must] cease with it.” Id. at 331, 105 A. 726. Cf. Holy Cross, etc. Church of God v. Trenton, 2 N.J.Tax 352, 357 (Tax Ct.1981).
As YWCA demonstrated, the raison d’etre for statutory exemptions from taxation is the benefit conferred upon the public by such religious, charitable or other similar institutions and the consequent relief, to some extent, of the burden imposed on the State to care for and advance the interest of its citizens. The exemption is granted in recognition of the benefit which the public derives from the fulfillment of the exempt organization’s activities and objectives.
Our former Supreme Court in Kimberley School v. Montclair, 137 N.J.L. 402, 60 A.2d 313 (1948), put it this way:
Equality is the basic principle of taxation. Exemption therefrom can be justly sustained only upon the principle that the concession is due as quid pro quo for the performance of a service essentially public, and which the state thereby is relieved pro tanto from the necessity of performing, such as works of charity and education, freely and charitably bestowed, as evidenced by the legislation under consideration, [at 405^06 [60 A.2d 313]]
Accordingly, without the performance of some service essentially public which relieves the state pro tanto from the necessity of performance, the exemption becomes essentially a gift of public funds. Ibid.
The single thread that runs through the cases heretofore reviewed is that there must be actual use made of the buildings in accordance with the exemption statute. Actual public use or *400 being ready to provide such public use is the required quid pro quo. Mere intention to use for an exempt purpose at some time in the future will not suffice. Trenton Ladies, supra, is consistent with this premise. There, taxpayer had accomplished all that could be done to provide the public benefit contemplated by the exemption provision. Had needy persons taken advantage of the benefit prior to the assessment date, it would have been clear that exemption was proper. In any event, plaintiff was prepared to provide public service in exchange for the exemption well in advance of the assessment date.
In light of the purpose of exemptions, the language in N.J. S.A. 54:4-3.6 can reasonably be construed to mean that the exemption is not to be allowed unless the institution actually is in a position to provide the services or benefits deemed important enough to cause the exception from the rule of taxation.
Moreover, had the Legislature intended that an exception to the rule of taxation apply during the course of construction of a building partially used or to be used for exempt purposes, it could have expressly so provided. Our sister State of New York has a statute which expressly extends exemption from taxation to property on which a building is being constructed or if construction of a building thereon is in good faith contemplated. N.Y. Real Property Tax Law § 420, subd. 3. The statute continues the exemption during such time as property not actually used is being prepared for such use, and it includes not only the period of actual construction but also a reasonable time for making the necessary preparations for construction.[2] Our exemption statute does not reveal a legislative intent to effect the exemption for which New York has expressly provided.
*401 Application of the foregoing to the present issue, and mindful of the basis and purpose of tax exemption, leads this court to conclude that plaintiff’s claim for exemption must be denied.
Plaintiff insists that it complied with the statute because it made actual use of the building for exempt purposes prior to the assessment date. But it is just as evident that plaintiff was not in a position to provide its services and/or benefits to the public in general. It was clearly shown that the building was not available nor was it used for public benefit until after February 28, 1980. It must be conceded that plaintiff was providing most of its public services at its rented facilities in Rahway and not at the subject building in Cranford. The only recipients of plaintiff’s endeavors were those congregants who partook of the fellowship or prayer services. The remainder of the congregation only visited the site for the purpose of viewing the progress of the construction. Neither the community at large, nor the majority of plaintiff’s congregation for that matter, were able to benefit from plaintiff at the Cranford site prior to or on the assessment date. Consequently, the State was not relieved of any burden. On the contrary, the taxing district had to assume additional responsibilities during the construction period. Its police and fire services were available while the building was being readied for its ultimate purposes.
I therefore conclude that the subject is not exempt for the tax year 1980. This conclusion can find support aside from the taxing statutes. I cannot conceive that the Legislature had intended to encourage the use of incomplete structures so that taxpayers could avoid taxation during the construction period. A denial of an exemption discourages the use of incomplete and unsafe structures and fosters a policy in accordance with our construction codes.
Additionally, I conclude that plaintiff’s use during construction was incidental and hence did not qualify as “actual and exclusive” use under the exempt provision. I find that the services held at the building during construction did not constitute the primary or dominant purpose for congregants being in *402 the building but was secondary or incidental. The primary purpose for the volunteers being in the building was not religious but secular. The wholly secular purpose was to complete the building. The services held for the men were conducted to encourage the participants to stay at the building in order to complete it. The women’s services were held with the same secular interest and purpose — to advance the construction of the building. While this purpose is wholly admirable, it does not comport with the requirements of the exemption statute. See Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 399-400, 371 A.2d 22 (1977).
When viewed in this light, it is evident that throughout the construction period the primary and dominant religious and educational objectives of plaintiff were being sought in rented facilities in Rahway while a short-range secular goal of completing a structure was being sought in Cranford. I conclude for this additional reason that plaintiff’s purposes and limited activities at the site in Cranford at or prior to October 1, 1979 were not within the statutory exemption allowed in N.J.S.A. 54:4-3.6.
Accordingly, the Clerk of the Tax Court is directed to issue a judgment affirming the determination of the Union County Board of Taxation.

 N.J.A.C. 5:23-2.7(a)(i) provides in pertinent part:
1. New buildings: A building or structure hereafter erected shall not be used or occupied in whole or part until a form of certificate of occupancy shall have been issued by the construction official.

In Cedars of Lebanon Hosp. v. Los Angeles Cty., 35 Cal.2d 729, 221 P.2d 31 (Sup.Ct.1950), the court held that buildings in the course of construction on the assessment date could not be said to be actually used by the exempt charity. Subsequent to this determination the California Legislature provided exemptions for buildings in the course of construction. National Charity League, Inc. v. Los Angeles Cty., 164 Cai.App.2d 241, 330 P.2d 666 (D.Ct.App. 1958).