KAHN, J.T.C.
This is the court’s opinion with respect to cross-motions for summary judgment. The tax year in question is 2000. Defendant (“municipality”) notified plaintiff (“taxpayer”) that a certain improvement under construction, but not yet complete as of October 1, 1999, was subject to an assessment of $1,250,000. Taxpayer filed its complaint, appealing this partial assessment.
*412 Taxpayer is a nursing home, which, according to its amended by-laws, “is organized exclusively for. charitable, religious, educational, and scientific purposes, [it] ... may solicit contributions and other financial assistance to support its programs including, without limitation, assistance to aged persons of limited means.... ” Moreover, the by-laws indicate taxpayer is organized under N.J.S.A. 15A:1, et seq., as amended, as a not for profit corporation. Accordingly, prior to the present assessment, taxpayer’s facility was exempt from local property taxation for a number of years.
All of the land on the five acre tract in question is owned and operated by taxpayer in pursuit of its corporate mission to provide care for the elderly. Taxpayer’s property consists of approximately five acres of land upon which three different facilities currently exist: (1) the skilled nursing facility, (2) the residential health care facility, and (3) the assisted living facility.[1]
As of October 1,1999, the relevant assessing date, the property was licensed to hold thirty residents in its skilled nursing facility, and thirty five residents in its residential health care facility. At that time, the improvement under review herein (assisted living facility) was unoccupied and under construction, with about 80% of the work completed. The 74 additional units comprising the assisted care facility were completed on April 1, 2000, with actual occupancy occurring around April 12, 2000 Upon completion of said construction, all three facilities were interconnected.
This court must determine whether a structure, which is partially erected as of October 1 of the pre-tax year, can be assessed if said structure is an addition to a previously tax exempt structure. *413 The essential facts are undisputed. Taxpayer does not contest the amount of the proposed assessment ($1,250,000) of the partially completed structure on October 1,1999. Moreover, it is important to point out that this opinion only concerns taxpayer’s taxable status for the 2000 tax year. Whether taxpayer will be entitled to an exemption in the future is not currently in issue.
I. LAW AND ANALYSIS.
A. Summary Judgment Standard.
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 666 A.2d 146 (1995), the New Jersey Supreme Court revised the summary judgment standard[2] and articulated:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue m favor of the non-moving party.
[142 N.J, at 523, 606 A.2d 140.]
Furthermore, “ ‘the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord ... [them] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.’ ” *414 Brill, supra, 142 N.J. at 535, 666 A.2d 146 (citing Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991) (other citations omitted)).
B. Taxable Status.
In order to grant summary judgment in favor of the municipality, this court must first find that taxpayer’s facility, was, as a matter of law, a taxable structure as of October 1, 1999. The controlling statute is N.J.S.A. 54:4-3.6, which exempts all buildings actually used in the work of associations and corporations organized exclusively for hospital purposes from property tax. N.J.S.A. 54:4-3.6. The statutory definition of “hospital purposes” includes health care facilities for the elderly, such as nursing homes, residential health care facilities, and assisted living facilities. See ibid.
To qualify for an exemption under the aforementioned statute, courts have traditionally applied the following three part test, promulgated by the New Jersey Supreme Court in Paper Mill Playhouse v. Millbum Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984):(1) the corporation must be organized exclusively for a tax exempt purpose; (2) its property is actually and exclusively used for the tax exempt purpose; and (3) the operation and use of its property is not conducted for profit. 95 N.J. at 506, 472 A.2d 517. In determining whether an entity meets those criteria, this court recognizes that exceptions to local property tax statutes like N.J.S.A. 54:4-3.6 are strictly construed, because they depart from the principle that everyone should shoulder their fair share of the tax burden. Container Ring Co. v. Director, Div. of Taxation, 1 N.J.Tax 203, 208 (Tax 1980), aff'd per curiam o.b., 4 N.J.Tax 527 (App.Div.), certif. denied, 87 N.J. 416, 434 A.2d 1090 (1981) (citing Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961)). While this rule of construction cannot be allowed to defeat legislative intent, such considerations do not destroy a preference for the taxability of property. See Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956).
*415 Notwithstanding this rule, the issue presently before the court is whether taxpayer’s partially completed assisted living facility met the Paper Mill Playhouse criteria on October 1, 1999, thereby entitling it to an exemption under N.J.S.A. 54:4-3.6.[3]
In order to do so, taxpayer must first show that it is organized exclusively for a tax exempt purpose. N.J.S.A. 54:4-3.6. The definition of exempt purposes under N.J.S.A. 54:4-3.6 includes “all buildings actually used in the work of associations and corporations organized exclusively for hospital purposes.” N.J.S.A. 54:4-36. Moreover, “hospital purposes” is further defined to include “health care facilities for the elderly, such as nursing homes; residential health care facilities; assisted living residences; ... [and] similar facilities that provide medical, nursing, or personal care services to their residents ....” Id. Thus, in order to fulfill the first requirement of the test, taxpayer’s organizational documents must specify that its purpose is to provide hospital services as defined by the aforementioned statute.
In the present case, taxpayer’s Articles of Incorporation specifically state that it is incorporated pursuant to an act of which, “sole and exclusive object of is the relief of poor and aged persons of both sexes, who shall by sickness, casualty or other cause be rendered incapable of or attending to their usual occupation or calling.” Similarly, taxpayer’s amended by-laws state that it “is organized exclusively for charitable, religious, educational, and scientific purposes, [it] ... may solicit contributions and other financial assistance to support its programs including, without limitation, assistance to aged persons of limited means.... ” Moreover, those by-laws also indicate that taxpayer is organized as a not for profit corporation organized under N.J.S.A. 15A:1-1 to:14-25, et seq., as amended. In light of these facts, this court finds that taxpayer is organized exclusively for hospital purposes as defined by N.J.S.A. 54:4-3.6.
*416 Next, taxpayer must demonstrate that it actually operates on a not for profit basis. See Paper Mill Playhouse, supra, 95 N.J. at 506, 472 A.2d 517. New Jersey courts have adopted a “realistic common sense” approach to this prong, and have avoided “mechanical centering on income and expense figures.” Id. at 521, 472 A.2d 517. Thus, the critical inquiry is not whether taxpayer actually makes a profit — rather, the focus is on whether the activity “is ‘conducted for the purpose of making a profit.’ ”[4] Id. at 522, 472 A.2d 517 (citations omitted). When undertaking such an analysis, it is instructive to trace cash flow. Ibid. More specifically, if surplus inures to the benefit of individuals in the form of dividends or other similar distributions, the corporate purpose is to turn a profit. Ibid. If, on the other hand, money is placed into an endowment fund or used to pay moderately priced salaries, the fact that the corporation may operate at a surplus is not relevant to obtaining an exemption under N.J.S.A. 54:4-3.6. See Id. at 522-23, 472 A.2d 517.
In the present case, taxpayer charges residents fees for room and board and medical expenses.[5] However, these fees, coupled with Medicare and Medicaid payments do not cover the yearly costs of operating the facility. As a result, taxpayer uses investment income from its endowment to make up the difference. In fact, a review of taxpayer’s estimated yearly operating expenses and certifications reveals that without the aforementioned investment income supplement, taxpayer typically operates at a significant loss. More telling, however, is that all endowment revenue or income from endowment investments which exceeds the operating budget is returned to the endowment fund. In light of these facts, this court finds that taxpayer’s business is not conducted for the purpose of making a profit.
*417 The third and most pertinent issue before this court is whether taxpayer can demonstrate actual and exclusive use of the property in question. Paper Mill Playhouse, supra, 95 N.J. at 506, 472 A.2d 517. In order to obtain a property tax exemption under N.J.S.A. 54:4-3.6, the taxpayer must show actual use as of October 1, 1999 for a specified exempt purpose. City of Camden v. Camden Masonic Ass’n, 9 N.J.Tax 331, 839 (Tax 1987), aff'd o.b. sub mon., City of Camden v. Block 214, Lot 21-, 23-33 North 4th Str., 11 N.J.Tax 88 (App.Div.1989). Mere intended or projected use is not enough to qualify for an exemption. See Hillcrest Health Serv. Sys., Inc. v. Hackensack City, 18 N.J.Tax 38, 47 (Tax 1998). Even where the character of a building under construction and its adoption to an exempt use are evident, a property tax exemption does not attach until actual use commences. See Holy Cross Precious Zion Glorious Church of God v. Trenton City, 2 N.J.Tax 352, 857-58 (Tax 1981).
Generally, exemptions are granted in recognition of the benefit conferred upon the public in fulfillment of the exempt organization’s objectives. See Grace & Peace Fellowship Church, Inc. v. Cranford Tp., 4 N.J.Tax 391, 399 (Tax 1982). In order to justify an exemption, there must be a quid pro quo for the performance of a service that is essentially public. See Roman Catholic Archdiocese of Newark v. City of East Orange, 17 N.J.Tax 298, 312 (Tax 1998), aff'd, 18 N.J.Tax 649 (App.Div.2000). As Judge Andrew pointed out in Grace & Peace Fellowship Church, supra, “[t]he single thread that runs through the cases ... is that there must be actual use made of the buildings in accordance with the exemption statute.” 4 N.J.Tax at 399. Thus, actual public use or capability to provide such use is usually the required quid pro quo.
This court, however, carved out an exception to the rule for property that exhibits a “continued exempt character.” Paper Mill Playhouse v. Millburn Tp., 7 N.J.Tax 78, 86 (Tax 1984). The Paper Mill Playhouse court, limited the exception to include property which was previously exempt, but, for one reason or another, discontinues actual use of the property during a discrete reconstruction period. See id. at 84. There, the court found an *418 exception for a previously exempt theater, which exempted it for a two-year reconstruction period after it was destroyed by a fire. Id. at 80-81, 86-87. It reasoned that the exemption at bar was consistent with the policy behind N.J.S.A. 54:4-3.6, in that it would not interfere with the preparation of the municipal budget.[6] Id. at 86-87.
In the present case, taxpayer merely constructed an addition to an already tax exempt structure for which taxpayer filed an initial application for exemption from local property taxation on October 19, 1970, with its most recent Further Statement filed on December 11, 1998. In fact, with the exception of the present appeal, taxpayer has been exempt from local property taxation since at least 1971. Thus, the present facts are similar to those presented in Paper Mill Playhouse, supra, in that the municipality did not historically rely on taxpayer as a ratable in determining its budget, and under the present circumstances, would not impose an assessment on taxpayer upon completion of the construction. For those reasons, this court finds that taxpayer is entitled to the “continued exempt character” exception from the actual use requirement of N.J.S.A. 54:4-3.6.
The municipality contends that (1) the present facts do not fall within the parameters of the exception because it is limited to situations where property is destroyed because of “acts of God;” and (2) the present facts are more similar to those presented to this court in Hillcrest Health Service, supra. There, the Tax Court found a partially constructed, four-story building and parking garage taxable, even though it was owned by a not for profit corporation. See Hillcrest, supra, 18 N.J.Tax at 40, 48. The new facility in question was located across the street from a hospital, which intended to use it in conjunction with charitable hospital work. Id. at 41-42; see also Grace & Peace Fellowship Church, supra, 4 N.J.Tax 391 (holding a partially constructed church being *419 built on a vacant parcel of land taxable because it was not actually in use).
This court rejects both of the municipality’s arguments. The court in Paper Mill Playhouse, supra, intended to create an exception to the “actual use” requirement where previously exempt property is not in such actual use for a discrete construction period. In those cases, the court will grant a “continued character” exception during the construction period, and where reasonable, assume the previously exempt use will continue upon completion of the aforementioned period.
The municipality’s attempt to narrowly define this exception to construction resulting from acts of God does not take into account the policy considerations of the municipal budget. Generally, a municipality will not incorporate assessments from previously exempt buildings into its budget planning. Thus, once exempt, it does not matter how or why the construction on said property begins, because those considerations have no effect on the budget process.
Moreover, Hillcrest, supra, is clearly distinguishable from the present case, because the exemption there was located across the street from the hospital which was entitled to an exemption and was being built on land that was not exempt when construction commenced.[7] 18 N.J.Tax at 41. Under those circumstances, the “continued character” exemption does not apply, because the municipality will reasonably rely on the property as a ratable when calculating its budget.
Thus, pursuant to the Paper Mill Playhouse “continued character exception,” this court holds that property which is previously exempt under N.J.S.A. 54:4-3.6 at the time it com- *420 menees construction will not lose said exemption even if, for a limited time period, it is not in “actual use.” The opposite result would create a paradox in which previously exempt property would lose its exception during a period of construction, only to have it reinstated upon completion of same.
It is important to point out that this holding does not prevent the municipality from recapturing tax dollars from taxpayer if, upon completion of said construction, taxpayer no longer qualifies for an exemption under N.J.S.A. 54:4-3.6. While the general rule provides that all taxable real property must be valued as of October 1 of the pre-tax year, the statutory scheme does allow municipalities to recapture lost tax dollars through the added assessment law. See e.g., N.J.S.A. 54:4-63.2.[8] “The purpose of the added assessment law is to permit the taxation of real property which becomes taxable diming the year following the assessment date of October 1, in order to avoid having properties escape taxation until the next assessment arrives.” Snyder, supra, 1 N.J.Tax at 7, (citing N.J.S.A. 54:4-63.2). Generally, courts will apply the added assessment law where (1) a building is erected or improved after October 1, (2) municipal property is sold to a private owner after October 1, or (3) where property that is exempt as of October 1 is later sold to a non-exempt entity. City of East Orange v. Palmer, 47 N.J. 307, 321, 220 A.2d 679 (1966) (citations omitted). In sum, if taxpayer’s improvements have the effect of removing its exemption under N.J.S.A. 54:4-3.6, the municipality can turn to the added assessment law to recapture those lost property tax dollars.
II. CONCLUSION.
The municipality’s motion for summary judgment is denied. Taxpayer’s cross-motion for summary judgment is granted, there *421 by entitling it to a property tax exemption pursuant to N.J.S.A. 54:4-3.6 for the 2000 tax year.

 Taxpayer's affidavits explain the different functions of the three facilities which compose the Job Haines complex. More specifically, the skilled nursing facility provides twenty-four hour registered nurses to patients in private and semi-private rooms. In addition to the nurses, residents have access to a physical therapist, dietician, and psychologist. The assisted living facility, however, does not provide twenty-four hour nursing. Rather, those residents are primarily supervised by the facility’s staff. Finally, the residential health care facility houses those residents who require the least amount of medical assistance.

 Judson v. Peoples Bank and Trust Co of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954), appeal after remand, 25 N J. 17, 134 A.2d 761, (1957), was the "definitive expression of the standards governing the grant or denial of a summary judgment motion." Pressler, Current N.J. Court Rules, comment on R. 4:46-2 at 1521 (2001). Before the Brill revision, summary judgments were rarely and sparingly granted because it was necessary to "palpably" demonstrate there is no genuine issue of material fact. See Judson, supra, 17 N J 67, 110 A.2d 24.

 See Snyder v. Bor of South Plainfield, 1 N.J.Tax 3, 7 (Tax 1980) (citing N.J S.A. 54:4-23 for the position that "[a]ll taxable real property must be valued as of October 1 of the pre-tax year").

 The opposite construction would place taxpayer in the anomalous position of having to lose money to qualify for an exemption.

Taxpayer certifies that this fee is below the market standard for comparable for-profit corporations which provide similar services.

 The court explained that because municipalities generally do not rely on obtaining tax dollars from historically exempt property, continuing an exemption of a previously exempt property for a discrete period of time was not contrary to statutory intent.

 There, the court recognized the continuing use exception of Paper Mill Playhouse, supra, but distinguished its facts in two ways. First, the court pointed out that the taxpayer was unable to establish ownership of the property at the time it was previously exempt. See Hillcrest, supra, at 47-48. Second, and more importantly, the court distinguished the Paper Mill Playhouse exception by explaining that it only applies where there is a preexisting exempt building, not oh a vacant parcel Id at 48.

 The municipality may also recapture lost tax dollars under N.J.S.A. 54:4-63.26, which provides that, "[wjhenevcr any real property is by law exempt from taxation and the right to such exemption ceases by reason of a change in use or ownership of such property, the same shall be assessable as omitted property as hereinafter provided." See also Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 371 A.2d 22 (1977).