SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Christian Mission John 3:16 v. Passaic City (A-33-19) (083487)**

**Argued April 28, 2020 -- Decided July 15, 2020**

**SOLOMON, J., writing for the Court.**

N.J.S.A. 54:4-3.6 exempts from taxation "all buildings actually used for" specific enumerated purposes, including "the work of associations and corporations organized exclusively for religious purposes," subject to certain restrictions. The Court considers whether that exemption may apply to a warehouse owned by Christian Mission John 3:16 (Christian Mission), a Passaic-based Christian congregation, for tax year 2013.

The record in this case reveals that Christian Mission owned a building and an adjacent parking lot in Passaic. In 2009, Christian Mission purchased the property at issue here (the property), a commercial warehouse located next to the existing church.

In 2012, Christian Mission applied for a local property tax exemption for the property, seeking exemption for the 2013 tax year. A tax assessor for the City found that, as of July 2012, the warehouse had been stripped down to "essentially a shell or frame." Additionally, building, electric, and fire inspections remained incomplete, and no certificate of occupancy had been issued as of October 1, 2012, the valuation date for the 2013 tax year. The City found that the property was not actually used for a tax-exempt purpose as of the valuation date and denied the application. Christian Mission appealed.

On appeal before the Tax Court, the parties filed cross-motions for summary judgment. 30 N.J. Tax 357, 362-63 (Tax 2018). Christian Mission filed an affidavit from Reverend Francisco Joissim (the Reverend), who certified in part that, from 2009 through 2011, "Christian Mission continued to use the property in question in one form or another . . . . At all times the basement was used for storage of church items. A copy of photographs, taken in January 2012, depict the condition of the church . . . during this entire period."

The Reverend also noted that, during the January-September 2012 construction period, "[w]ith rare exception, every single morning I went to the site and conducted religious services. These services were comprised of approximately 10 people, including church members who were part of the construction crew, and often other members and/or spouses joining." Finally, the Reverend certified that "[d]uring this construction period I

1

also met with and counseled congregants as part of my ministerial duties at the site. Often following morning prayer sessions, but also at various other times." Christian Mission argued, citing the Reverend's affidavit, that it satisfied the criteria for a local property tax exemption under N.J.S.A. 54:4-3.6 in time for the October 1 valuation date.

The Tax Court upheld the City's denial of the 2013 exemption, holding that, as of the valuation date, the building was not "a fully functional establishment prepared to offer its charitable services to the public" and was not "actually used" for an exempt purpose as of the October 2012 valuation date. Id. at 368, 373-74. The court also held that the lack of a certificate of occupancy supported its conclusion. Id. at 377-78.

The Appellate Division affirmed, emphasizing that "Christian Mission has not claimed the services were open to the public or even to other congregants of the church who may have been present." After noting that there was no evidence of storage during construction or as of the valuation date in 2012, the appellate court stressed the lack of "even a temporary certificate of occupancy." The Appellate Division concluded that Christian Mission failed to establish a dispute of material fact as to whether the property was "actually used" for an exempt purpose as of the October 2012 valuation date.

The Court granted certification. 240 N.J. 248 (2019).

**HELD:** It was error to grant summary judgment because, construing all inferences in Christian Mission's favor, there is evidence that the property might have been used in a manner that could satisfy N.J.S.A. 54:4-3.6's actual use requirement -- storage of religious items and/or other church-related activities at the property before construction began, during construction, and as of the valuation date in 2012.

1. N.J.S.A. 54:4-3.6 exempts from taxation "all buildings actually used in the work of associations and corporations organized exclusively for religious purposes," as well as the land on which those buildings are located. Tax exemptions, such as those provided by N.J.S.A. 54:4-3.6, are granted by the State in recognition of the contribution of the exempt facility to the public good. That the use of the property is available to or most immediately benefits only some narrow segment of the general public is not fatal to finding that the property is "actually used" for the public good. (pp. 12-13)

2. A religious tax exemption under N.J.S.A. 54:4-3.6 is granted for a building if: (1) the property owner is organized exclusively for the exempt religious purpose; (2) the building on the property is actually used for that exempt purpose; and (3) the owner's operation and use of the property are not conducted for profit. When determining whether a property is actually used for a tax-exempt purpose, the Tax Court evaluates whether the property is reasonably necessary for such tax-exempt purposes. The timing of the use of a property is also a critical consideration. Even where the character of a building under construction and its adoption to an exempt use are evident, a property tax

2

exemption does not attach until actual use commences.  Although a property under construction will not be exempt based on its projected use once finished, a property will not lose its exemption despite a period when actual use is paused by construction.  The principle that interruptions in an exempt actual use -- when the exempt actual use precedes and follows the period of disuse -- do not result in a loss of tax exemption status, has come to be known as the "continued exempt character" exception to the actual use requirement.  (pp. 13-17)

3.  The Court considers Christian Mission's contention that the building was "actually used" for storage.  Storage of documents and artifacts of a religious nature or related to the operation of the church has been deemed a religious purpose consistent with the exemption granted by N.J.S.A. 54:4-3.6.  Viewed in a light most favorable to Christian Mission, the Reverend's certification evidences storage of religious items at all times during the construction in 2012 and thereafter.  It also evidences storage of religious items and other ostensibly exempt uses of the property during the period before construction, from 2009 to 2011, which may support its "continued exempt character." The Court acknowledges that this application of "continued exempt character" exceeds prior use of the doctrine, since the property had never before been granted a religious use tax exemption, but finds that the prior usage of the property in this case is relevant to whether a religious tax exemption should be granted here.  The Court therefore remands the matter to the Tax Court to develop the record.  (pp. 17-20)

4.  The Court does not disturb the Tax Court's finding, affirmed by the Appellate Division, that morning prayer services for parishioner-construction workers as described in the Reverend's affidavit were insufficient on their own, as a matter of law, to constitute "actual use."  In reaching that conclusion, the Appellate Division neither engaged in a "quantum of use" analysis nor placed undue emphasis upon the absence of a certificate of occupancy.  The issuance of a certificate of occupancy, temporary or final, does not establish a bright line that must be crossed before a tax exemption may be granted.  The lack of a certificate of occupancy is germane, however, to the issue of whether a property's condition renders it unsafe -- a factor to be considered in determining actual use for tax-exemption purposes.  Similarly, the public good served in exchange for a tax exemption does not demand that the facility or services rendered by the exempt institution be available to the general public.  Rather, the public good underlying a religious tax exemption may be satisfied even where services are offered only to a limited group, such as the members of a congregation.  Finally, that the property is next to an already-exempt lot is irrelevant here.  The issue is actual use or continuing exempt character, not proximity.  (pp. 20-23)

**REVERSED and REMANDED to the Tax Court for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.**

SUPREME COURT OF NEW JERSEY
A-33 September Term 2019
083487

Christian Mission John 3:16,

Plaintiff-Appellant,

v.

Passaic City,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 28, 2020 | July 15, 2020 |

Tova L. Lutz and Christopher John Stracco argued the
cause for appellant (The Lutz Law Group and Day
Pitney, attorneys; Tova L. Lutz, Christopher John
Stracco, Sarah Sakson Langstedt, and Erin Hodgson,
on the briefs).

Kenneth A. Porro argued the cause for respondent
(Chasan Lamparello Mallon & Cappuzzo, attorneys;
Kenneth A. Porro, of counsel and on the briefs, and
Edna J. Jordan, on the briefs).

David R. Oakley submitted a brief on behalf of amici
curiae the General Council of the Assemblies of God,
the Union of Orthodox Jewish Congregations of America,
the Jewish Coalition for Religious Liberty, the Church
of Jesus Christ of Latter-day Saints, and the Sisters of
Saint Francis of Perpetual Adoration Immaculate Heart

1

of Mary Province (Anderl & Oakley, Sidley Austin, and Yale Law School Free Exercise Clinic, attorneys; David R. Oakley on the brief, and Erika L. Maley and Derek A. Webb, of the District of Columbia bar, admitted pro hac vice, and Gordon D. Todd, of the District of Columbia and Virginia bars, admitted pro hac vice, and Christopher S. Ross, of the District of Columbia, Ohio and New York bars, admitted pro hac vice, and Christopher C. Pagliarella, of the District of Columbia and New York bars, admitted pro hac vice, on the brief).

Mark Salah Morgan submitted a brief on behalf of amicus curiae Coptic Archdiocese of North America (Day Pitney, attorneys; Mark Salah Morgan and Michael L. Fialkoff, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

N.J.S.A. 54:4-3.6 exempts from taxation "all buildings actually used for" specific enumerated purposes, including "the work of associations and corporations organized exclusively for religious purposes," subject to certain restrictions. In this appeal, the Court considers whether that exemption may apply to a warehouse owned by Christian Mission John 3:16 (Christian Mission), a Passaic-based Christian congregation, for tax year 2013.

In 2009, Christian Mission purchased a warehouse (the property) on a lot adjacent to its church building and sanctuary in the City of Passaic (the City). Christian Mission used the warehouse for storage of religious items and church-related activities from 2009 to 2011. In 2012, Christian Mission began converting the warehouse to a sanctuary and applied for a religious tax

2

exemption for that property for tax year 2013.  That application was denied because the City found that, as of October 1, 2012, the valuation date for the 2013 tax year, the property was not "actually used" for an exempt purpose as required by N.J.S.A. 54:4-3.6 and was without a certificate of occupancy or proof of compliance with safety regulations.[1]

In its appeal to the Tax Court, Christian Mission argued it was entitled to the exemption because morning prayer services were held for church members working at the construction site and because church items were stored there. The Tax Court disagreed, finding that any use of the property for prayer services was merely incidental and unsafe because the property was a construction site without a certificate of occupancy and not open to the public. The court therefore granted summary judgment against Christian Mission.  The Appellate Division affirmed.

We granted Christian Mission's petition seeking review of the determination that its property did not satisfy the "actual use" requirement of N.J.S.A. 54:4-3.6 as of the valuation date.  We hold it was error to grant summary judgment because, construing all inferences in Christian Mission's

---

[1]  The City granted Christian Mission's application for a tax exemption for the following tax year, 2014, finding that the property was "actually used" for an exempt purpose as of the valuation date for that year.

3

favor, there is evidence that the property might have been used in a manner that could satisfy the actual use requirement -- storage of religious items and/or other church-related activities at the property before construction began, during construction, and as of the valuation date in 2012. We therefore remand the matter to the Tax Court for further fact-finding and proceedings.

I.

The record in this case reveals that Christian Mission owned a building and an adjacent parking lot on the corner of Madison Street and Leonard Place in Passaic. In 2009, Christian Mission purchased the property at issue here, a commercial warehouse located at 250 Madison Street next to the existing church.

Christian Mission applied at some point for a religious tax exemption for the property; the record does not reveal for which tax year prior to 2013 Christian Mission sought exemption. The City rejected that application based on its finding that the property was not actually being used for an exempt purpose by the relevant valuation date.

In 2012, Christian Mission once again applied for a local property tax exemption for the property, seeking exemption for the 2013 tax year. A tax assessor for the City found that, as of July 2012, the warehouse had been stripped down to "essentially a shell or frame." Additionally, building,

4

electric, and fire inspections remained incomplete, and no certificate of occupancy had been issued as of October 1, 2012, the valuation date for the 2013 tax year. Based on the condition of the structure, as evidenced by photographs of the construction site, the City found that the property was not actually used for a tax-exempt purpose as of the valuation date and denied the application. The City assessed the property at a total value of $213,000 for tax year 2013. Christian Mission appealed.[2]

On appeal before the Tax Court, the parties filed cross-motions for summary judgment. Christian Mission John 316 v. Passaic City, 30 N.J. Tax 357, 362-63 (Tax 2018). In support of its motion and in opposition to the City's motion, Christian Mission filed an affidavit from Reverend Francisco Joissim (the Reverend). In paragraph five of the affidavit, the Reverend certified in part that,

> [f]rom 2009 through [2011], the property remained in its original form, essentially that of a large open space. During this time, Christian Mission continued to use the property in question in one form or another, as an extension of its regular religious activities, which were primarily conducted at the adjoining corner church-house. These included ceremonial activities, religious services during mild weather months, youth rallies, women's rallies, fundraising activities, fairs and

---

[2] The City issued a temporary certificate of occupancy for the property in April 2013, and then a final certificate of occupancy in July 2013. Christian Mission applied for and was granted a 2014 property tax exemption.

storage of various items associated with church functions.  At all times the basement was used for storage of church items.  A copy of photographs, taken in January 2012, depict the condition of the church . . . during this entire period . . . .

In the remaining paragraphs of his affidavit, the Reverend certified that "[i]n order to complete the transition . . . to a formal church, the premises underwent significant renovations during 2012; commencing around January 2012 and concluding around September 2012," and that "[c]ommunity religious services began some time around September with formal services commenced around the time of Thanksgiving 2012."  The Reverend continued, noting that

> [d]uring the entire construction period (January 2012 - September 2012) the church remained in active use. With rare exception, every single morning I went to the site and conducted religious services.  These services were comprised of approximately 10 people, including church members who were part of the construction crew, and often other members and/or spouses joining. These services lasted approximately 20 minutes and involved participants holding hands, reading scripture from Psalms and Deuteronomy, singing songs of prayer, shared and personal praying and concluded with me blessing the workers as they were about to begin their work day ahead.

Finally, the Reverend certified that "[d]uring this construction period I also met with and counseled congregants as part of my ministerial duties at the site. Often following morning prayer sessions, but also at various other times."

6

Christian Mission argued, citing the Reverend's affidavit, that it satisfied the criteria for a local property tax exemption under N.J.S.A. 54:4-3.6 in time for the October 1 valuation date.

The Tax Court upheld the City's denial of the 2013 exemption, holding that, as of the valuation date, the building was not "a fully functional establishment prepared to offer its charitable services to the public." Id. at 368, 373-74. The court stated that, because no contentions had been made as to the 2012 tax year about the property's use for storage, and because the morning prayer services were available primarily to parishioners among the construction crew, the building was not "actually used" for an exempt purpose as of the October 2012 valuation date. Id. at 373-74.

The Tax Court also held that the lack of a certificate of occupancy was evidence in support of its conclusion, noting that no certificate had been issued in part because Christian Mission had yet to demonstrate the safety of the building as a space for religious services or other activities. Id. at 377-78. The court explained that it could not

> envision that our Legislature intended to condone behavior of a taxpayer who/which attempts to make actual use of a property under construction, and not previously afforded a tax exemption, prior to the date that such property is permitted to be occupied and used, in order to qualify for local property tax exemption under N.J.S.A. 54:4-3.6. Such actions jeopardize

7

> public safety and are counterintuitive to the very purposes of the exemption statute, which is to offer the public a service in an environment free from danger, thereby relieving the State from a concomitant burden.
>
> [Id. at 377.]

The Tax Court concluded that because no certificate of occupancy had been issued, the property could not, under the facts in this case, "be viewed as actually in use, or fully available for use for religious activities, under N.J.S.A. 54:4-3.6 as of the October 1, 2012 valuation date." Id. at 377-78. The Tax Court stressed that its decision would apply only to the property at issue here and any other property that "(1) ha[s] not previously been granted tax exemption; (2) [is] experiencing new construction or renovation to permit an intended use of the property for an exempt purpose; and (3) ha[s] not been the subject of an added assessment." Id. at 378. Christian Mission appealed.

The Appellate Division affirmed the decision of the Tax Court, emphasizing that "Christian Mission has not claimed the services were open to the public or even to other congregants of the church who may have been present." After noting that there was no evidence of storage during construction or as of the valuation date in 2012, the appellate court stated that the lack of "even a temporary certificate of occupancy is some evidence that the building was not open to the general public" because it "implied that the

8

building was not actually in use for religious activities at the relevant time." The Appellate Division concluded that Christian Mission failed to establish a dispute of material fact as to whether the property was "actually used" for an exempt purpose within the meaning of N.J.S.A. 54:4-3.6 as of the October 2012 valuation date.

We granted Christian Mission's petition for certification. 240 N.J. 248 (2019). We also granted the motion of the Coptic Archdiocese of North America and the consolidated motion of the General Council of the Assemblies of God, the Union of Orthodox Jewish Congregations of America, the Jewish Coalition for Religious Liberty, the Church of Jesus Christ of Latter-day Saints, and the Sisters of Saint Francis of Perpetual Adoration Immaculate Heart of Mary Province for leave to appear as amici curiae.

## II.

In its petition to this Court, Christian Mission makes the following arguments: (i) the Tax Court and Appellate Division engaged in impermissible quantum of religious use analyses; (ii) the Appellate Division improperly held the property could not have been actually used because it did not have a certificate of occupancy; (iii) the Appellate Division fabricated an unconstitutional "public access" requirement; (iv) the Tax Court and Appellate Division failed to uphold precedent encouraging exemptions for properties

9

under construction that are adjacent to affiliated lots with properties that are already tax exempt; and (v) the Reverend's certification that the property had been used for storage "at all times" was improperly interpreted as asserting only that it had been used for storage prior to construction in 2012, rather than also as of the October 2012 valuation date.

The City asserts that it properly withheld a certificate of occupancy because the property was unsafe for use, and there was therefore no error in declining to find actual use. The City also points out that the continuing exempt character theory of Job Haines Home for the Aged v. Township of Bloomfield, 19 N.J. Tax 408, 417 (Tax 2001) -- a case mentioned by the Tax Court at the summary judgment hearing, but not cited by the parties until Christian Mission's petition to this Court -- applies only when a property is used for an exempt purpose up until construction.

Amici align with Christian Mission's arguments against a public access requirement for a religious tax exemption. They also join Christian Mission in challenging judicial reliance on a quantum of use analysis when deciding whether to uphold denial of an exemption.

### III.

We review the grant of summary judgment by the same standard governing the motion judge's determination. Caraballo v. City of Jersey City

Police Dep't, 237 N.J. 255, 264 (2019).  Thus, we will uphold a grant of summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2).

We similarly analyze "the meaning of a statute . . . de novo."  Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).  For purposes of that analysis, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning."  N.J.S.A. 1:1-1; see also Murray, 210 N.J. at 592.

Because we interpret provisions from New Jersey's tax laws, we are also mindful that, where ambiguity exists, "[t]ax-exemption statutes are strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation."  N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177 (1996).

11

IV.

A.

"In New Jersey, all real property is subject to local property taxation . . . unless its use has been exempted" by legislation. <u>Hunterdon Med. Ctr. v. Township of Readington</u>, 195 N.J. 549, 553 (2008) (citing N.J.S.A. 54:4-1 (stating the general rule of property taxation); <u>N.J. Const.</u> art. VIII, § 1, ¶ 2 (permitting legislation-based exemptions to taxation according to the usage of property)). N.J.S.A. 54:4-3.6 is such legislation, and it exempts from taxation "all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes" as well as "the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned."

Tax exemptions, such as those provided by N.J.S.A. 54:4-3.6, are granted by the State as a quid pro quo in recognition "of the contribution of the exempt facility to the public good." <u>Roman Catholic Diocese of Newark v. Borough of Ho-Ho-Kus</u>, 42 N.J. 556, 566 (1964). That the use of the property is available to or most immediately benefits only some narrow segment of the general public is "not fatal" to finding that the property is "actually used" for the public good. <u>Girls Friendly Soc'y of Pa. v. Cape May City</u>, 26 N.J. Tax

12

549, 567 (Tax 2012) (citing Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 216 (1961)); see, e.g., id. at 557, 563, 574 (finding the actual use requirement met even though the society's seasonal vacation house was open only to society members or through referral, not to the general public); see also, e.g., City of Long Branch v. Monmouth Med. Ctr., 138 N.J. Super. 524, 533 (App. Div. 1976) ("The furnishing of housing facilities to resident physicians, interns and nurses on the hospital staff is reasonably necessary for the proper and efficient operation of the hospital."), superseded in other part by statute, L. 1985, c. 395.

B.

A religious tax exemption under N.J.S.A. 54:4-3.6 is granted for a building if: (1) the property owner is organized exclusively for the exempt religious purpose; (2) the building on the property is actually used[3] for that exempt purpose; and (3) the owner's operation and use of the property are not conducted for profit. See Hunterdon Med. Ctr., 195 N.J. at 561. The dispute

---

[3] The statute originally required that the property be actually and exclusively used for the exempt purpose, but the law was later amended to remove the exclusivity requirement. See Hunterdon Med. Ctr., 195 N.J. at 561 n.9 (citing L. 1983, c. 224, § 1, which deleted the exclusivity requirement by legislative amendment).

in this appeal centers on the second of these three requirements -- whether the property was "actually used" for the exempt purpose at the pertinent times.

"When determining whether a property is actually used for a tax-exempt purpose, the Tax Court evaluates whether the property is 'reasonably necessary' for such tax-exempt purposes." Borough of Hamburg v. Trs. of Presbytery of Newton, 28 N.J. Tax 311, 318 (Tax 2015) (quoting Roman Catholic Archdiocese of Newark v. East Orange City, 18 N.J. Tax 649, 653 (App. Div. 2000)). The "actual use" requirement does not demand that the particular use of the building is "absolutely indispensable" to the tax-exempt purpose. Boys' Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 401 (1977).

The timing of the use of a property is also a critical consideration. "Even where the character of a building under construction and its adoption to an exempt use are evident, a property tax exemption does not attach until actual use commences." Job Haines, 19 N.J. Tax at 417. For example, the pre-1948 New Jersey Supreme Court held that a property on which a church was being constructed was not "actually used" within the meaning of the tax exemption statute applicable at the time; instead, "[t]he most that can be said . . . is that the building was intended to be thereafter used for a charitable purpose." Inst. of Holy Angels v. Borough of Fort Lee, 80 N.J.L. 545, 546

14

(Sup. Ct. 1910). And the Tax Court reached a similar result in 1982, even though -- as here -- prayer services were conducted at a church property while the building as to which exemption was claimed remained under construction. Grace & Peace Fellowship Church, Inc. v. Cranford Township, 4 N.J. Tax 391, 393-95 (Tax 1982).

In Grace & Peace Fellowship Church, the Tax Court found that, even though the building's exterior, heating system, and most of the electric wiring were complete by the October valuation date, the building was not "actually used" for a tax-exempt purpose. Id. at 394, 401-02. The court explained that whether or not the limited prayer services satisfied the public good requirement of "actual use," "the Legislature [could not have] intended to encourage the use of incomplete structures so that taxpayers could avoid taxation during the construction period. A denial of an exemption discourages the use of incomplete and unsafe structures and fosters a policy in accordance with our construction codes." Id. at 401. As it did in this appeal, the Tax Court concluded that the plaintiff's use of the church during the period of construction was merely "incidental" and did not qualify as actual use for purposes of a tax exemption. Ibid.

Although a property under construction will not be exempt based on its projected use once finished, a property will not lose its exemption despite a

15

period when actual use is paused by construction.

> [P]roperty which is previously exempt under N.J.S.A. 54:4-3.6 at the time it commences construction will not lose said exemption even if, for a limited time period, it is not in "actual use." The opposite result would create a paradox in which previously exempt property would lose its exception during a period of construction, only to have it reinstated upon completion of same.
>
> [Job Haines, 19 N.J. Tax at 419-20.]

In Job Haines itself, for example, the Tax Court found that an under-construction addition to an already-exempt nursing home was likewise exempt because the addition was being built on the same tract of land as the original building. Id. at 418. The Job Haines court relied on Paper Mill Playhouse v. Township of Millburn, in which the Tax Court held that a theater's tax-exempt status was not affected by the temporary discontinuation of the property's actual use during its two-year period of reconstruction after a fire. See 7 N.J. Tax 78, 80-81, 86-87 (Tax 1984). The principle that interruptions in an exempt actual use -- when the exempt actual use precedes and follows the period of disuse -- do not result in a loss of tax exemption status, has come to be known as the "continued exempt character" exception to the actual use requirement. See Job Haines, 19 N.J. Tax at 417-18 (quoting Paper Mill Playhouse, 7 N.J. Tax at 86).

We next apply these principles to the actual uses claimed by Christian Mission.

V.

Here, two allegedly exempt actual uses have been asserted by Christian Mission:  the continuous use of the building for storage, and the morning prayer services offered by the Reverend to the members of the congregation engaged in construction.  We turn first to the asserted use of storage.

A.

The Tax Court construed the Reverend's certification to lack any assertion that the property was used for storage during 2012, Christian Mission, 30 N.J. Tax at 361 n.2, and the Appellate Division agreed, finding no evidence of use for storage during construction or as of the valuation date in 2012.  This was error.  Viewing the record in the light most favorable to Christian Mission, we find that it adduced sufficient evidence that the building was used for storage at the relevant times to withstand the City's motion for summary judgment.

The Reverend's undisputed certification states that from 2009 to 2011 Christian Mission "continued to use the property in question in one form or another . . . includ[ing for] ceremonial activities, religious services during mild weather months, youth rallies, women's rallies, fundraising activities, fairs and

17

storage of various items associated with church functions." The certification goes on to state that "[a]t all times the basement was used for storage of church items" and then refers to photographs taken in January 2012 purportedly showing the condition of the property during "this entire period." The succeeding paragraphs assert that "significant renovations" began in January 2012.

Although its language is imprecise, the Reverend's assertion that the building was used for storage "at all times" must be considered in context, with all reasonable inferences construed in favor of Christian Mission. It is undisputed that the building was used for storage of church items and for church-related activities prior to the period of construction. In light of its transition from the 2009-2011 period to discussion of the events of 2012 and beyond, however, the affidavit may fairly be read to convey that the storage continued at all times during the construction in 2012 and thereafter.

The Tax Court has "held that 'storage of documents and artifacts of a religious nature or related to the operation of the church should be deemed a religious purpose consistent with the exemption granted by [N.J.S.A. 54:4-3.6].'" Presbytery of Newton, 28 N.J. Tax at 319 (quoting City of Long Branch v. Ohel Yaacob Congregation, 20 N.J. Tax 511, 527 (Tax 2003) (holding that off-season use as a storage facility of a residence seasonally used

18

for visiting clergy was inadequate to establish actual use absent testimony regarding amount of storage use or availability of other storage facilities)).

Viewed in a light most favorable to Christian Mission, the Reverend's certification evidences storage of religious items at all times during the construction in 2012 and thereafter. It also evidences storage of religious items and other ostensibly exempt uses of the property during the period before construction, from 2009 to 2011, which may support its "continued exempt character." Cf. Job Haines, 19 N.J. Tax at 417-20; Paper Mill Playhouse, 7 N.J. Tax at 80-81, 86-87.

We note that this case is distinct from Grace & Peace Fellowship Church, where there was no evidence of the property's use for an exempt purpose before construction began. Here, by contrast, although the building had been denied a tax-exemption once before, there is evidence that the building was used for storage "at all times," and that it was used for other church activities in the prior years. Thus, unlike Grace & Peace Fellowship Church, there is evidence here of use for an exempt purpose before the period of construction, during construction, and as of the October 2012 valuation date, which may implicate the "continued exempt character" exception.

We acknowledge that this application of "continued exempt character" exceeds prior use of the doctrine, since the property had never before been

19

granted a religious use tax exemption.  Indeed, as noted above, Christian Mission applied at some earlier point for an exemption, but the City denied that application.  Christian Mission did not seek judicial review of that denial, but neither the denial nor the decision not to challenge it precludes consideration of the prior usage of the property in this case.  See Byram Township v. W. World, Inc., 111 N.J. 222, 235 (1988) (noting that a "tax assessment has no res judicata effect on subsequent assessments").  The prior usage of the property in this case is relevant to whether a religious tax exemption should be granted here.

We therefore remand the matter to the Tax Court to develop the record.  On remand the court should consider whether actual use of the property for an exempt religious purpose as of the valuation date in October 2012 satisfied the actual use requirement of N.J.S.A. 54:4-3.6, entitling Christian Mission to a religious tax exemption.  In doing so, the court should consider the uses from 2009 to 2011, before construction, and whether they were reasonably necessary to an exempt purpose.

B.

We do not disturb the Tax Court's finding, affirmed by the Appellate Division, that morning prayer services for parishioner-construction workers as

20

described in the Reverend's affidavit were insufficient on their own, as a matter of law, to constitute "actual use."

In reaching that conclusion, the Appellate Division did not engage in a "quantum of use" analysis, as is alleged by Christian Mission and supportive amici.[4] Rather, the court relied primarily on Grace & Peace Fellowship Church, in which the Tax Court found that the "occasional meetings of prayer groups" at an under-construction church lacking a certificate of occupancy did not warrant application of the exemption when under-construction buildings had been generally held not to qualify for exemption. (discussing 4 N.J. Tax at 397-401, and citing Holy Angels, 80 N.J.L. 545, and Holy Cross Precious Zion Glorious Church of God v. Trenton City, 2 N.J. Tax 352, 357-58 (Tax 1981)).

Furthermore, we do not find that the Appellate Division placed undue emphasis upon the absence of a certificate of occupancy. We note that the issuance of a certificate of occupancy, temporary or final, does not establish a bright line that must be crossed before a tax exemption may be granted. Newark City v. Block 322, 17 N.J. Tax 103, 105 (Tax 1997); cf. Soc'y of the

---

[4] We refrain from issuing any holding as to the permissibility of quantum of religious use analyses for purposes of determining whether a property owner is entitled to a religious tax exemption for that property. See Presbytery of Newton, 28 N.J. Tax at 319 ("When interpreting N.J.S.A. 54:4-3.6, New Jersey courts have thus far declined to impose a minimum level of activity requirement on the use test.").

Holy Child Jesus v. City of Summit, 418 N.J. Super. 365, 368 (App. Div. 2011) (holding that a violation of zoning and construction ordinances is not enough to deny a tax exemption without legislative authorization); Corbacho v. Mayor & Council of Newark, 16 N.J. Tax 240, 249 (App. Div. 1997) (holding that a tax abatement could not be denied on the basis of a building code without legislative authorization). The lack of a certificate of occupancy is germane, however, to the issue of whether a property's condition renders it unsafe -- a factor to be considered in determining actual use for tax-exemption purposes. See Grace & Peace Fellowship Church, 4 N.J. Tax at 401.

Similarly, the public good served in exchange for a tax exemption does not demand that the facility or services rendered by the exempt institution be available to the general public. Girls Friendly Soc'y of Pa., 26 N.J. Tax at 567. Rather, the public good underlying a religious tax exemption may be satisfied even where services are offered only to a limited group, such as the members of a congregation. See, e.g., Monmouth Med. Ctr., 138 N.J. Super. at 533 (finding that a hospital-owned building used as a dormitory for resident physicians, interns, and nurses was "reasonably necessary for the proper and efficient operation of the hospital" and so was "actually used" for the exempt purpose of operating a hospital for the general public and entitled to tax exemption).

22

Finally, that the property is next to an already-exempt lot is irrelevant here. The issue is actual use or continuing exempt character, not proximity. See Job Haines, 19 N.J. Tax at 417-20 ("Hillcrest [Health Services System, Inc. v. Hackensack City] is clearly distinguishable . . . because the exemption there was located across the street from the hospital which was entitled to an exemption and was being built on land that was not exempt when construction commenced. Under those circumstances, the 'continued character' exemption does not apply." (citing 18 N.J. Tax 38, 41 (Tax 1998))).

## VI.

For the reasons set forth above, and because at this summary judgment stage we draw all inferences in Christian Mission's favor, the judgment of the Appellate Division is reversed and the matter is remanded to the Tax Court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.